```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
TRUSTEES OF THE BUILDING TRADES
EDUCATIONAL BENEFIT FUND, THE
BUILDING TRADES ANNUITY BENEFIT
FUND, and THE BUILDING TRADES
WELFARE BENEFIT FUND,

                        Plaintiffs,           MEMORANDUM & ORDER
        -against-                              10 CV 2065 (DRH) (WDW)

CRANA ELECTRIC, INC.

                        Defendant.
-----------------------------------------------------------X
```

**APPEARANCES:**

**BARNES, IACCARINO & SHEPHERD, LLP**
Attorneys for Plaintiffs
3 Surrey Lane
Hempstead, New York 11550
By:   Danielle Marlene Carney, Esq.

**JASON SAMUELS, P.C.**
Attorneys for Defendant
100 Jericho Quadrangle
Suite 309
Jericho, New York 11753
By:   Jason S. Samuels, Esq.

**HURLEY, Senior District Judge:**

Plaintiffs Trustees of the Building Trades Educational Benefit Fund, The Building Trades Annuity Benefit Fund and the Building Trades Welfare Benefit Fund (collectively, the "Trustees" or "plaintiffs") commenced the present action against Crana Electric, Inc. ("Crana" or "defendant") seeking injunctive relief, monetary damages, and other equitable relief based upon defendant's alleged violations of the Employee Retirement Income Security Act, 29 U.S.C. §§ 1132(a)(3) & 1145 ("ERISA") as well as its alleged breach of a collective bargaining agreement.

Defendant has moved to dismiss the entire Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), (3), and (6)[1] on the grounds that plaintiffs' first two claims for relief are barred by the doctrine of *res judicata* and that plaintiffs' third and fourth causes of action are not yet ripe for review. Plaintiffs have cross-moved for judgment on the pleadings pursuant to Rule 12(c). For the reasons stated below, both motions are denied.

### BACKGROUND

The following facts are taken from the Complaint and are presumed true for purposes of the instant motions.

The Trustees are fiduciaries of jointly administered multi-employer labor management trust funds, as those terms are defined by ERISA (the "Funds"). The Funds are employee benefits plans that provide fringe benefits to eligible employees, retirees, and dependents. According to plaintiffs, the Funds were established and are maintained by Local 363, United Electrical Workers of America, IUJAT (the "Union"), and various employers participate in the Funds pursuant to the terms of their respective collective bargaining agreements and trust indentures.

Crana is a for-profit corporation organized and existing pursuant to the laws of the State of New York. Crana and the Union are parties to a collective bargaining agreement (the "CBA"), which obligates Crana to make certain contributions to the Funds. The amount of Crana's contributions is calculated pursuant to rate schedules set forth in the CBA, which account for all work performed by covered employees.

---

[1] Although defendant's Notice of Motion includes Rule 12(b)(3) as a basis for its motion, defendant's papers contain no further reference to that section of the Rule.

Plaintiffs allege that defendant has failed to make $108,508.32 in contributions to the Funds for the period between February 1, 2005 and July 31, 2006. In their First Claim for Relief, plaintiffs asserts that defendant's failure to make those contributions violated the CBA, to which the Funds are third party beneficiaries. Plaintiffs contend that they are entitled to contribution reports, which set forth the hours that each of Crana's employees worked and the amount of contributions due, as well as payment of unpaid benefit contributions in the minimum amount of $108,508.32 plus liquidated damages, interest, costs and attorneys' fees.

In their Second Claim for Relief, plaintiffs allege that defendant's failure to pay the contributions violates ERISA, and pursuant to Sections 502 and 515 of that statute, plaintiffs are entitled to $108,508.32 in unpaid contributions plus statutory damages, interests, attorneys' fees, and costs.

In the Third Claim for Relief, plaintiffs allege that during the pendency of this action, "additional contributions and/or delinquency charges may become due and owing." (Compl. ¶ 27.) Plaintiffs assert that any additional contributions or charges that defendant fails to pay "should be included plus interest as part of this action." (*Id.*)

Finally, in the Fourth Claim for Relief, plaintiffs seek a permanent injunction that would enjoin Crana from committing any further violations of the CBA.

### DISCUSSION

**I.** ***Defendant's Motion to Dismiss the First and Second Claims for Relief is Denied***

    **A.** *Introduction*

Defendant moves to dismiss the First and Second Claims for Relief pursuant to Rule 12(b)(1). Although defendant does not set forth the applicable legal standard, the Court notes

that it may resolve a motion made under Rule 12(b)(1) by "refer[ring] to evidence outside the pleadings." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Here, the entire set of facts underpinning defendant's motion stem from allegations and documentary evidence outside the four corners of the Complaint, which are set forth in the Affidavit of Jason S. Samuels, dated August 27, 2010 (the "Samuels Aff.") and the exhibits attached thereto. However, as discussed more fully, *infra*, the Court concludes that defendant's motion to dismiss the First and Second Claims for Relief pursuant to the doctrine of *res judicata* is more appropriately made pursuant to Rule 12(b)(6). It is well-settled that when resolving motions made pursuant to Rule 12(b)(6), the Court is generally limited to reviewing the factual allegations contained in the Complaint. (*See, infra*.) The Court, therefore, sets forth the following factual recitation – gleaned from the Samuels Affidavit and its exhibits – for context only, and does not rely on these facts or extrinsic materials in rendering its decision.

**B.     Factual Allegations Proffered by Defendant**

At some point prior to 2005,[2] non-party Vanguard Construction & Development Co. Inc. ("Vanguard") was awarded a government contract (the "Contract") and began serving as the prime contractor on a renovation project at the Smithsonian Institution's National Museum of the American Indian ("Smithsonian Project"). (Samuels Aff., Ex. D at ¶3.) Vanguard subsequently entered into a subcontract with Crana pursuant to which Crana was to provide the electrical and security systems work on the Smithsonian Project. (Samuels Aff., Ex. D at ¶ 4.) Thus, Crana employees worked on the Smithsonian Project between mid-2005 and mid-2006.

Defendant asserts that in late 2006, the United States Department of Labor ("DOL")

---

[2]     The Court cannot discern the exact date from the submissions of the parties.

4

commenced an investigation of allegations involving unpaid or underpaid wages and benefits owed to seven Crana employees. (Samuels Aff. at ¶ 5.) As a result of the investigation, the DOL ordered the Smithsonian Institution to withhold $395,915.65 from Vanguard's payments under the Contract "in order to recompense" these underpaid Crana employees. (Samuels Aff. at ¶ 8 & Ex. D at ¶ 7.) The Smithsonian Institution complied with the DOL's directive. The DOL subsequently instituted an administrative proceeding against both Vanguard and Crana pursuant to the Davis Beacon Act, 40 U.S.C. § 276(a), and 29 C.F.R. § 6.32, before the Honorable Adele H. Odegard, an Administrative Law Judge of the DOL. (Samuels Aff. at ¶ 9.) The goal of the proceeding was, *inter alia*, to "distribut[e] the funds that were being withheld by the DOL and/or the Smithsonian Institution." (*Id.*)

Defendant alleges that its counsel contacted the Union and plaintiffs and requested that they intervene in the administrative proceeding "at least to the extent of [claiming] any benefits that were allegedly due and owing" to the Union or the Funds in connection with the alleged underpayment of defendant's employees for their work on the Smithsonian Project. (*Id.* at ¶ 10.) Plaintiffs, however, did not enter any appearance in connection with the administrative proceeding. (*Id.* ¶ 14.)

Subsequently, the DOL and Vanguard reached a settlement of the matter. On September 2, 2009, the ALJ adopted their stipulations and agreements and entered an order dismissing the proceedings against Vanguard (the "ALJ's Vanguard Order"). (Samuels Aff., Ex. D.) Pursuant to the ALJ's Vanguard Order, Vanguard agreed to pay the seven Crana employees "a total of $328,000.00 for unpaid prevailing wage rate, fringe benefit, and overtime violations currently held in backwages," which amount would be distributed to those employees by the DOL.

5

(Samuels Aff., Ex. D at ¶ 8.)

At the same time, the DOL and Crana also reached an agreement, and by order dated September 2, 2009 the ALJ adopted their stipulations and agreements and dismissed the proceedings against Crana (the "ALJ's Crana Order"). (Samuels Aff., Ex. E.) In the parties' agreements, which were incorporated into the ALJ's Crana Order, Crana neither admitted nor denied that it had failed to properly pay its seven employees during the relevant time period. (Samuels Aff., Ex. E at ¶ 6.) Crana did, however, stipulate that the alleged violations would be "admitted in this proceeding for the purposes of debarment," and it consented to a three-year debarment from future new government contracts. (Samuels Aff., Ex. E at ¶¶ 8, 9.)

According to defendant, just as the DOL proceedings were in the process of settling, defendant's counsel urged plaintiffs to notify the ALJ or DOL of "any claims they might allege with respect to the monies earmarked for payment" to the Crana employees. (Samuels Aff. at ¶ 20.) Defendant contends that plaintiffs indicated their intention to "seek collection directly against Crana" rather than present any claims to the DOL. (*Id.* at ¶ 21.) To that end, by letter dated September 17, 2009, plaintiffs notified defendant that they intended to commence an arbitration proceeding to collect delinquent contributions in the amount of $108,508.32. (Samuels Aff., Ex. I.) The letter set forth that the amount claimed was based on the results of an audit conducted on the Smithsonian Project for the period between February 2005 and July 2006.

After receiving plaintiffs' September 17, 2009 letter, Crana filed a Notice of Petition in New York State Supreme Court, Queens County seeking a stay of the arbitration. (Samuels Aff., Ex. J.) The parties subsequently entered into a settlement agreement, pursuant to which plaintiffs waived their right to arbitrate their claims against Crana, and agreed instead to bring their claims

6

in federal court. (Samuels Aff., Ex. K.) Plaintiffs commenced this action on May 6, 2010.

  C.  *Defendant's Contentions*

Defendant asserts that "it is undisputed that the $108,502.32 [currently sought by plaintiffs] was included in the $328,000.00 of funds earmarked for payment to the [seven Crana employees] pursuant to the settlement [of] the DOL administrative proceeding." (Samuels Aff. at ¶ 26.) Defendant argues that plaintiffs are simply seeking an "unjust double recovery," and so their claims are barred by the doctrine of *res judicata*. (Def.'s Mot. at 4, 6.) In sum, defendant contends that "the issue of nonpayment of wages and benefits" to its employees on the Smithsonian Project "was raised in the administrative proceeding, and . . . adjudicated in that all alleged unpaid benefits and wages were earmarked for payment" to its employees. (*Id.* at 6.)

  D.  *This Portion of Defendant's Motion is More Appropriately Made Pursuant to Rule 12(b)(6)*

Defendant does not set forth the appropriate legal standard to be applied by the Court in resolving its motion to dismiss. As noted above, defendant purports to bring this portion of its motion pursuant to Rule 12(b)(1). (*See* Def.'s Mot. at 1.) It is well-settled, however, that "the doctrine of *res judicata* or issue preclusion in no way implicates jurisdiction." *Thompson v. Cnty. of Franklin*, 15 F.3d 245, 253 (2d Cir. 1994). Thus, a motion seeking dismissal of a complaint on *res judicata* grounds "is not jurisdictional and, prior to the filing of an answer, is properly considered under Rule 12(b)(6)," rather than Rule 12(b)(1). *See Kesten v. E. Sav. Bank*, 2009 WL 303327, at * 1 n.1 (E.D.N.Y. Feb. 9, 2009) (citing *Thompson*, 15 F.3d at 253); *see also Calemine v. Gesell*, 2007 WL 2973708, at *1 n.1 (E.D.N.Y. Sept. 28, 2007) (finding that "the grounds for [the defendants] motion, res judicata and statute of limitations, are both properly

7

considered under Rule 12(b)(6)."). Thus, the Court will consider this portion of defendant's motion under the legal standard applicable to a motion made pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

This decision has an important, if apparently unanticipated, effect on defendant's motion. As noted above, while the Court may consider matters outside the pleadings on a Rule 12(b)(1) motion, it is well-settled that "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration 'to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.'" *Leonard F. v. Israel Discount Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quoting *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991)). However, every single fact set forth in support of this portions of defendant's motion stems from evidence outside the pleadings.

### 1. Judicial Notice of the ALJ's Orders

Defendant has not offered any legal theories as to how the Court should proceed in this circumstance. On possibility is that the Court could take judicial notice of the ALJ's Vanguard and Crana Orders. *See Bd. of Managers of the 195 Hudson Street Condo. v. Jeffrey M. Brown Assocs., Inc.*, 652 F. Supp. 2d 463, 471 (S.D.N.Y. 2009) (finding the court "may properly rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including the public record of prior judicial decisions."); *Frith v. Hill*, 2009 WL 3073716, at *16 n.10 (S.D.N.Y. Sept. 23, 2009) (noting that on a Rule 12(b)(6) motion, a court may consider any material that is "a proper subject of judicial notice under Fed. R. Evid. 201(b)," including "the rules, regulation and orders of administrative agencies issued pursuant to their delegated

authority") (internal quotation marks omitted) (collecting cases).

Even if the Court were to take judicial notice of the ALJ's decisions, however, defendant's motion would still fail. Dismissal of a claim based on *res judicata* is appropriate only "where it is clear from the face of the complaint and from matters of which the Court takes judicial notice that plaintiff's claim are barred." *Bd. of Managers of the 195 Hudson Street Condo.*, 652 F. Supp. 2d at 472. Here, it is not at all clear from the ALJ's Vanguard and Crana Orders that plaintiffs' First and Second Claims for Relief are barred by *res judicata*.

First, the ALJ's Vanguard Order does not make clear, on its face, that $108,508.32 (the amount sought by plaintiffs as alleged delinquent contributions) was actually "earmarked" for payment by Vanguard to the seven Crana employees. The ALJ's Vanguard Order sets forth only that Vanguard neither admitted nor denied the DOL's allegation that seven Crana employees were "owed a total of $328,000.00 for unpaid prevailing wage rate, fringe benefit, an overtime violations," and that Vanguard agreed to pay that amount to those employees. (Samuels Aff., Ex. D at ¶ 8.) Defendant contends that the $328,000.00 figure necessarily includes the $108,508.32 in alleged delinquent contributions, but this fact is not at all evident from the face of the ALJ's Vanguard Order. Accordingly, the Court is not in a position to conclude that the claims asserted in this action for $108,508.32 in delinquent contributions were "or could have been, raised in the prior action," a necessary element of *res judicata*. *See Monahan v. N.Y. City Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000).

Additionally, the ALJ's Vanguard and Crana Orders, on their face, do not demonstrate that Crana ever paid the $108,508.32 at issue in the present action. Rather, pursuant to the ALJ's Vanguard Order, *Vanguard* was responsible for paying $328,000.00 to the Crana employees.

9

The ALJ's Vanguard Order further provided that Vanguard would authorize the Smithsonian Institution to deduct $328,000.00 from the amount Vanguard was owed pursuant to the Contract, and transfer that money to the United States Government Accountability Office. (*See* Samuels Aff., Ex. D at ¶ 8.) Neither the ALJ's Vanguard Order nor the ALJ's Crana Order addressed whether Vanguard could pass on this cost to Crana or whether Crana would have an obligation to reimburse Vanguard in that amount. Thus, because it is not clear from the ALJ's Orders that Crana ever actually paid the $108,508.32 at issue here, defendant has failed to adequately support its claim that this suit essentially seeks an "unjust double recovery" of the $108,508.32 payment. (*See* Def.'s Mot. at 6.)

Finally, as support for its motion, defendant cites to numerous other documents and correspondence that purportedly evidence plaintiffs' awareness of Crana's impending settlement with the DOL, as well as plaintiffs' failure to seize the opportunity to stake its claim to any owed contribution amounts. (*See, e.g.*, Samuels Aff., Exs. C, F-K.) Even if the Court were to take judicial notice of the ALJ's Orders, it could not consider these extraneous materials.

### 2. The Court Declines to Convert Defendant's Motion Into a Motion for Summary Judgment

Another possibility is that the Court, presented with extraneous materials as part of defendant's Rule 12(b)(6) motion, could convert the motion into a motion for summary judgment. *See Kopec v. Coughlin*, 922 F.2d 152, 154 (2d Cir. 1991) ("Rule 12(b) gives district courts two options when matters outside the pleadings are presented in response to a 12(b)(6) motion: the court may exclude the additional material and decide the motion on the complaint alone or it may convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and

afford all parties the opportunity to present supporting material.") (internal citation and quotation marks omitted); *Abbey v. 3F Therapeutics Inc.*, 2009 WL 4333819, at *5 (S.D.N.Y. Dec. 2, 2009) (noting that a district court enjoys "complete discretion" over the decision to convert a Rule 12(b)(6) motion into a motion for summary judgment). "In general, a district court should give parties specific notice of its intent to convert a motion to dismiss into a motion for summary judgment." *Green v. Doukas*, 205 F.3d 1322, at *2 (2d Cir. Feb. 15, 2000) (unpublished). The Court, in its discretion, declines to exercise this option.

Initially, neither party has requested that defendant's motion be converted into a motion for summary judgment. *See Key Items, Inc. v. Ultima Diamonds, Inc.*, 2010 WL 3291582, at *5 (S.D.N.Y. Aug. 17, 2010) (declining to convert motion "[b]ecause neither party has expressly moved for summary judgment and because the parties have not completed discovery"). Moreover, the fact that no discovery has been taken in this action weighs heavily against conversion. *See Speedmark Transp., Inc. v. Mui*, 778 F. Supp. 2d 439, 439 n.1 (S.D.N.Y. 2011) (declining to consider extraneous materials or convert motion to summary judgment "since plaintiffs have not had the opportunity to take discovery from defendants") (collecting cases). This is particularly true given that "[r]*es judicata* inquiries often require a detailed analysis of a developed record." *Thompson*, 15 F.3d at 253.

Accordingly, that portion of defendant's motion seeking dismissal of the First and Second Claims for Relief is denied.

## II.     *Defendant's Motion to Dismiss the Third and Fourth Claims for Relief is Denied*

Defendant argues that the Third and Fourth Claims for Relief should be dismissed, pursuant to Rule 12(b)(1), for lack of subject matter jurisdiction. Specifically, defendant asserts

11

that neither claim is ripe for adjudication because each "seek[s] relief for 'contingent future events' that certainly have not yet occurred, and may never occur at all." (Def.'s Mot. at 7.)

### A. The Third Claim for Relief is Adequately Pled

In the Third Claim for Relief, plaintiffs allege that although defendant was "required to submit current fringe benefit contributions and reports to Plaintiffs" pursuant to ERISA and the CBA, "in the past" defendant has failed to comply with these obligations. (Compl. ¶¶ 25-26.) Thus, plaintiffs assert that to the extent defendant "fails to pay" any "additional contributions and/or delinquency charges [that] may become due and owing" during the pendency of the litigation, such "additional amount should be included plus interest as part of this action." (Id. ¶ 27.)

As plaintiffs point out (see Pls.' Opp'n & Cross Mot. at 8), "[i]n general, a district court has discretion to award ERISA damages that accrue during the pendency of an action." *Ames v. STAT Fire Suppression, Inc.*, 227 F.R.D. 361, 362 (E.D.N.Y. 2005). Plaintiffs contend that their Third Claim for Relief is meant to put defendant on notice that, if necessary, plaintiffs intend to assert such a claim should any further damages accrue. (Pls.' Opp'n & Cross Mot. at 8.) The Court finds this entirely appropriate. Indeed, many courts have noted that an award for delinquent contributions that have accrued during the pendency of a litigation often turns on whether such relief was "explicitly requested in the complaint." *Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Daniel Weintraub & Assocs., Inc.*, 2007 WL 4125453, at *5 (E.D.N.Y. Nov. 16, 2007); *see also Finkel v. The Triple A Grp., Inc.*, 708 F. Supp. 2d 277, 282 (E.D.N.Y. 2010) (finding defaulting defendant liable for "those unpaid contributions that accrued during this litigation" when complaint included a request for such relief); *LaBarbera v. T&M Specialties*

*Ltd.*, 2007 WL 2874819, at *3 (E.D.N.Y. Sept. 27, 2007) (same).

Accordingly, defendant's motion to dismiss the Third Claim for Relief is denied.

### B.     *The Fourth Claim for Relief is Adequately Pled*

Defendant cites no case law in support of its argument that the Fourth Claim for Relief, which seeks to permanently enjoin Crana from "any further or future violations" of the CBA (Compl. ¶ 32), should be dismissed as unripe for adjudication. As plaintiffs note (*see* Pls.' Opp'n & Cross Mot. at 9), Section 502(a)(3) of ERISA explicitly permits a plan's fiduciary to commence an action "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). Moreover, it is not uncommon for a plaintiff to seek injunctive relief enjoining a defendant-employer from any further violations of a collective bargaining agreement. *See, e.g., Mingoia v. Crescent Wall Sys.*, 2004 WL 1885952, at *6-7 (S.D.N.Y. Aug. 23, 2004) ("In light of Defendants' past failures to make required contributions . . . permanent injunctive relief is justified . . . Accordingly, Defendants are permanently enjoined from violating the employee benefit fund contribution provisions of the Trade Agreements . . . ."); *Mason Tenders Dist. Council v. Envirowaste & Transcontractors, Inc.*, 1999 WL 370667, at * 3 (S.D.N.Y. June 7, 1999) (granting prospective injunctive relief to plaintiffs who sought "to enjoin defendants from committing any further [ERISA] violations in the future"). Thus, the Court cannot conclude that the Fourth Claim for Relief fails to state a claim upon which relief may be granted and, accordingly, defendant's motion to dismiss the Fourth Claim for Relief is denied.

### III.     *Plaintiffs' Cross-Motion for Judgment on the Pleadings is Denied*

Plaintiffs have cross-moved, pursuant to Rule 12(c), for judgment on the pleadings

13

contending that "there is no dispute" that defendant owes $108,508.32 in contributions to the Funds that has not been paid. (Pls.' Opp'n & Cross Mot. at 9.) Plaintiffs assert that defendant has failed to dispute that it was a party to the CBA or that the CBA required defendant "to pay to the Funds the $108,508.32 in delinquent contributions claimed by the Funds in this case." (*Id.* at 10 (citing Samuels Aff.).) In addition, plaintiffs contend that defendant "does not dispute that it has not paid the $108,508.32 in delinquent contributions to the Funds." (*Id.*) According to plaintiffs, therefore, based upon defendant's statements in its motion papers the Court may find, as a matter of law, that defendant violated various provisions of ERISA and is liable to the Funds for the amount of the delinquent contributions as well as interest, liquidated damages, and attorneys' fees. (*Id.*)

In response, defendant argues initially that plaintiffs' motion is improperly filed pursuant to Rule 12(c) because "a motion [for judgment] on the pleadings is only proper after the pleadings have closed." (Def.'s Reply & Opp'n to Cross Mot. at 9.) Defendant asserts that because it has not yet filed its answer, Rule 12(c) "[does] not apply." (*Id.*)

In the alternative, defendant recognizes that plaintiffs have cited to matters outside the Complaint and urges the Court not to convert plaintiffs' motion into a motion for summary judgment; defendant contends that it should be permitted "to submit a factual affidavit in its favor upon proper notice addressing the allegations in [plaintiffs'] cross-motion." (*Id.* at 10.) Specifically, defendant asserts that plaintiffs have failed to proffer any evidence "that the $108,508.32 is an accurate representation of unpaid benefits due and owing to the Plaintiffs from Crana," and contends that "Crana could deny the $108,508.32 if given the opportunity in its Answer to the Complaint." (*Id.* at 2.)

14

"In deciding a Rule 12(c) motion, [a court] appl[ies] the same standard as that applicable to a motion under Rule 12(b)(6)." *Livant v. Clifton*, 272 Fed. Appx 113, 115 (2d Cir. Apr. 7, 2008) (quoting *Desiano v. Warner-Lambert & Co.*, 467 F.3d 85, 89 (2d Cir. 2006)); *see also Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999) (same).  Even assuming that plaintiffs' motion is properly made pursuant to Rule 12(c), *c.f. Quartararo v. Catterson*, 917 F. Supp. 919, 930 (E.D.N.Y. 1996) (finding that Rule 12(c) "only becomes operative after the pleadings are closed") (internal alterations and quotation marks omitted), it must be denied because it suffers from the same defect as the first part of defendant's Rule 12(b)(6) motion: it relies entirely on materials extraneous to the Complaint, i.e., the Samuels Affidavit and exhibits attached thereto. (*See* Pls.' Opp'n & Cross Mot. at 9-10.)

Moreover, the Court declines to convert plaintiffs' motion to one for summary judgment. "As with Rule 12(b)(6) motions, Rule 12(c) motions generally are limited to the facts alleged in the complaint and must be converted into a motion for summary judgment if the court considers materials outside the pleadings." *Byrd v. City of New York*, 2005 WL 1349876, at *1 (2d Cir. June 8, 2005).  Here, defendant has specifically requested that the Court decline to convert plaintiffs' motion because defendant expects to uncover materials during discovery that would assist it in disputing, *inter alia*, the exact amount of delinquent contributions (if any) that it allegedly owes to plaintiffs.

Accordingly, plaintiffs' cross-motion is denied.

## *CONCLUSION*

For the reasons set forth above, defendant's motion to dismiss the Complaint is denied in its entirety. Additionally, plaintiffs' cross-motion seeking judgment on the pleadings is also denied.

**SO ORDERED.**

Dated:   Central Islip, New York
             September 22, 2011

                                         /s/                                    
                                         Denis R. Hurley
                                         United States District Judge